IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6079-Civ-Dimitrouleas/Johnson

BLANCHE BENFORD,               )
CLAVEDIA BROS, and             )
MADIE MOORE                    )
                               )
        Plaintiffs,            )
                               )
vs.                            )
                               )
                               )
NORTHWEST AIRLINES, INC.,      )
                               )
        Defendant.             )

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AS TO CLAIMS OF MADIE MOORE**

---

## I.     INTRODUCTION

Plaintiff Madie Moore ("Plaintiff" or "Moore") brought this action against her current

employer, Defendant Northwest Airlines, Inc. ("Northwest"), alleging race discrimination in

violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§1981"), gender

discrimination in violation of Title VII, and an alleged state law cause of action for "intentional

interference with right to contract," all arising from her disqualification from a cruise desk agent

position in February 1995. For the reasons set forth below and the undisputed material facts set forth

in Northwest's Statement of Material Facts, there is no genuine issue for trial and Northwest should

be granted summary judgment as a matter of law on each of Moore's claims.



## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a party is entitled to summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lobeck v. City of Riviera Beach*, 976 F. Supp. 1460, 1463 (S.D. Fla. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.")).  The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and establishing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once this initial demonstration is made, Fed. R. Civ. P. 56(e) requires the non-moving party to go beyond the pleadings, and by affidavits, deposition testimony, answers to interrogatories, or admissions on file, designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  This effectuates the purpose of summary judgment which "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom.*, *Jones v. Resolution Trust Corp.*, 516 U.S. 817 (1995).  Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists. *Id.*

The clear language of Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear

2

the burden of proof at trial." *Celotex*, 477 U.S. at 322. A complete failure of proof by the non-movant on an element essential to her case renders all facts immaterial, so the movant is entitled to judgment as a matter of law. *Id.* at 323; *see Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991) ("Facts in dispute cease to be 'material' facts when the plaintiff fails to establish a *prima facie* case."). In other words, there is no genuine issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.     LAW AND ANALYSIS

### A.     Moore's Title VII Claims For Race and Gender Discrimination Must Be Dismissed For Failure To Fulfill Procedural Prerequisites.

When examining a claim for Title VII discrimination, the Court must first determine if the plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *See Zipes v. Trans World Airlines, Inc.* 455 U.S. 385, 392 (1982) (before a claimant can file a Title VII civil action, she must file a timely charge with the EEOC.). A Title VII plaintiff must file a charge of discrimination within 300 days after learning of the conduct alleged. 42 U.S.C. § 2000e-5(e)(1). The 300 day period begins to run at the time the plaintiff received reasonable, unequivocal notice of an adverse and allegedly discriminatory employment decision. *Lieberman v. Miami-Dade County*. 2000 U.S. Dist. LEXIS 14789, at *6 (S.D. Fla. Aug. 16, 2000) (copy attached at Tab 1).

Title VII also provides that "within ninety days after the giving of . . . notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . .." 42 U.S.C. § 2000e-5(f)(1). Accordingly, a Title VII action may not be brought more than 90 days after a complainant has adequate notice that the EEOC has

3

dismissed the charge. *See, e.g., Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1339-41 (11th Cir. 1999).

In the present matter, Moore filed a charge of discrimination on March 15, 1995 with the City of Tampa alleging that her disqualification from the cruise desk in February 1995 was racially discriminatory. ("1995 Charge"). (Statement of Material Facts ¶ 46). Moore received a Notice of Right to Sue as a result of her 1995 Charge on or about December 2, 1997. (Statement of Material Facts ¶ 47). While Moore did file her 1995 Charge within 300 days of her disqualification from the cruise desk, Moore did not file a civil action within 90 days of receiving the Notice of Right to Sue. (Question: " .... And you did not file any lawsuit against Northwest Airlines within 90 days of when you received Exhibit 4 [Notice of Right to Sue dated December 2, 1997], correct?" Answer: "Correct.") (Statement of Material Facts ¶ 48). As a result, Moore's claim in her 1995 Charge that her disqualification from the cruise desk was unlawfully discriminatory in violation of Title VII is time-barred.

Moore filed a second charge with the EEOC in Atlanta on or about November 12, 1997 as part of a class action effort alleging race and gender discrimination ("1997 Charge"). (Statement of Material Facts ¶ 49). Moore does not recall a situation that prompted her to file her 1997 Charge. (Statement of Material Facts ¶ 51). However, Moore does recall that she did not go to the EEOC to file the 1997 Charge, but rather that she received the 1997 Charge from a lawyer in the mail, and that she signed it and returned it to the lawyer. (Statement of Material Facts ¶ 50). Moore admits that she does not recall anything occurring at Northwest that she considered unfair, improper, or discriminatory between the time of her disqualification from the cruise desk in February 1995 and her filing the 1997 Charge. (Statement of Material Facts ¶ 52). Moore's 1997 Charge regarding her

4

allegations of race and gender discrimination was not filed until November 1997, well over 300 days after the alleged discriminatory action (her disqualification from the cruise desk in February 1995) took place. Consequently, Moore cannot rely on her 1997 Charge as her administrative prerequisite underlying her Title VII claim in this action, since any such claim is time-barred. 42 U.S.C. § 2000e-5(e); *Paldano v. Althin Medical, Inc.*, 974 F. Supp. 1441, 1444 (S.D. Fla. 1996)("The filing of a Title VII cause of action within the time limits prescribed by 42 U.S.C. § 2000e-5(e) is a prerequisite to the maintenance of a Title VII action.").

Because Moore's 1995 Charge[1] and 1997 Charge both fail to meet procedural prerequisites to filing a civil action, Moore is precluded from bringing race and gender related charges pursuant to Title VII in her Complaint and Northwest is entitled to summary judgment on Moore's Title VII claims.

## B.     Moore's §1981 Claim Fails Because She Cannot Establish That Her Disqualification From The Cruise Desk Was Racially Discriminatory.

In *General Building Contractors Ass'n. v. Pennsylvania*, the Supreme Court thoroughly analyzed the legislative history of the Civil Rights Act of 1866 (42 U.S.C. §1981), and concluded that §1981 can be violated "only by purposeful discrimination." 458 U.S. 375, 391 (1982). Only cases alleging disparate treatment may be brought under §1981 - not cases alleging adverse impact. *General Building*, 458 U.S. at 391. Therefore, for Moore to prevail on her claim of racial discrimination under §1981, she must prove through disparate treatment evidence that Northwest intentionally discriminated against her on the basis of her race. *See Standard v. A.B.E.L. Servs., Inc.*,

---

[1] Moore's 1995 Charge did not include any allegation of gender discrimination. (Deposition of Madie Moore, Ex. 3). Accordingly, any claim for gender discrimination in the instant lawsuit is barred as outside the scope of Moore's 1995 Charge.

5

161 F.3d 1318, 1330 (11th Cir. 1998).

Moore apparently seeks to establish race discrimination in her disqualification from the cruise desk using circumstantial evidence, since she admits having no direct evidence of intentional race discrimination by Northwest. (Moore Dep. at 285-86). When a plaintiff attempts to prove intentional discrimination by using circumstantial evidence, the court applies the now familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Moore has the initial burden of establishing a *prima facie* case of discrimination. If she meets that burden, then an inference arises that the challenged action was motivated by a discriminatory intent. The burden then shifts to Northwest to "articulate" a legitimate, nondiscriminatory reason for its action. If Northwest successfully articulates such a reason, then the burden shifts back to Moore to show that the proffered reason is really pretext for unlawful discrimination.

### 1.    Moore Cannot Establish a *Prima Facie* Case of Race Discrimination.

To prove that her disqualification from the cruise desk was racially discriminatory in violation of §1981, Moore must establish a *prima facie* case of disparate treatment based upon race (which she cannot do). To establish a *prima facie* case of disparate treatment based upon race, Moore must establish: (1) that she is a member of a protected class; (2) that she is entitled to or qualified for the position; (3) that she suffered an adverse employment action; and (4) that she was treated less favorably than similarly-situated employees who were not members of the protected class. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Moore is African-American and thus meets the first prong of the test. The second prong relates to Moore's qualifications, or lack thereof. As will be detailed as necessary in Section C *infra*, providing Northwest's legitimate

6

nondiscriminatory reasons for disqualifying Moore from the cruise desk, Moore in fact was unqualified for the position.

Moore cannot prove the third prong of a prima facie case because Moore's disqualification from the cruise desk was not an adverse employment action. Moore's disqualification was not an adverse employment action as it did not alter Moore's "compensation, terms, conditions, or privileges of employment, deprive [her] of employment opportunities, or adversely affect [] her status as an employee." (Statement of Material Facts ¶ 7). *See Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), *cert. denied*, 121 S. Ct. 772 (2001). It is undisputed that Moore's disqualification did not affect her employment with Northwest as a reservation sales agent. Rather, Moore's compensation and benefits remained the same regardless of whether Moore worked on the cruise desk or the national sales desk. (Statement of Material Facts ¶ 29).

Finally, as discussed below, Moore cannot establish the fourth prong of the test that she was treated less favorably than other similarly-situated employees.

### a.    Moore Cannot Establish That Northwest Treated Similarly-Situated Employees Outside Her Classification More Favorably.

To prevail on her §1981 claim, Moore must show that a similarly-situated non-black employee was treated more favorably than she. *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995). A claim of disciplinary discrimination, for example, requires a showing that the misconduct in question was "nearly identical" to that engaged by an employee outside the protected class, who was not disciplined. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Jones v. Winn-Dixie Stores, Inc.*, 75 F. Supp. 2d 1357, 1364-65 (S.D. Fla.) (granting summary judgment where plaintiff alleged certain similar incidents but failed

to identify any comparator with the same record of insubordination), *aff'd.*, 203 F.3d 842 (11th Cir.

1999). Moore must show that she was similarly-situated to a non-black person in every respect,

including that the same decision-maker was involved, and that the alleged comparator was allowed

to work as a cruise desk agent while having the same probationary training problems. *See, e.g.,*

*Holifield*, 115 F.3d at 1562. Comparators need not be exactly the same, but Moore must offer some

evidence of a non-black employee who had "nearly the identical" probationary training problems,

but was allowed to work as a cruise desk agent.[2] *See Maniccia v. Brown*, 171 F.3d 1364, 1368-69

(11th Cir. 1999) (citing *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)).

If a plaintiff fails to show the existence of a similarly-situated employee, summary judgment

is appropriate where no other evidence of discrimination is present. *Holifield*, 115 F.3d at 1562.

---

[2]Dissimilar treatment is not synonymous with discrimination. As the Eleventh Circuit recently acknowledged:

> "Every employment decision involves discrimination. An employer, when deciding who to hire, who to promote, and who to fire, must discriminate among persons. Permissible basis for discrimination include education, experience, and references. . .. Thus, in an employment discrimination suit, the key question usually is: on what basis did the employer discriminate?"

*Wright v. Southland Corp.*, 187 F.3d 1287, 1289 (11th Cir. 1999).

Moore has no evidence of a similarly-situated comparator, much less one that was treated more favorably than Moore. Accordingly, Moore cannot show that she was treated differently than similarly-situated non-minority employees.

Moore testified that she had no problems or issues while training for the cruise desk prior to her November 24, 1994 training review. (Statement of Material Facts ¶ 12). Moore also testified that she had no problems or issues while training for the cruise desk between her second training review on January 20, 1995 and her disqualification on February 24, 1995. (Statement of Material Facts ¶ 24). However, Moore apparently alleges that on two occasions between November 24, 1994 and January 20, 1995 she was treated differently than white employees: (1) Moore and a white cruise desk agent, Karen Whitley, were working the same flight and, according to Moore, each filled out identical forms for that flight in the same way, except that Moore claims that Whitley told her that she [Moore] could not use that particular flight and that "yours is wrong, mine is right." (Statement of Material Facts ¶ 33); and (2) Moore along with several other cruise desk agents were left to work while other cruise desk agents went to Miami for a Christmas party. (Statement of Material Facts ¶ 33).

Moore's claim that she was treated dissimilarly to Whitley fails for several reasons. First, Moore was not similarly-situated to Whitley. Whitley was already a cruise desk agent and not on probation pending successful completion of training as was Moore. Second, the alleged issue with Whitley did not involve management. It was simply a situation where allegedly Whitley, a co-worker, told Moore that she was doing something wrong. By her own testimony, Moore admits that Whitley was not a manager, and that nobody in management ever said anything to Moore to suggest that management thought Moore was wrong and Whitley was right. (Statement of Material Facts

9

¶ 34). Thus, the situation with Whitley is nothing more than Moore feeling that a co-worker said something to her that she did not like or did not agree with. The Whitley example cited by Moore is not evidence of a similarly-situated non-minority employee who was treated differently than Moore.

Likewise, Moore's claim that she was treated less favorably than other cruise desk agents when she stayed to work while other cruise desk agents went to Miami for a Christmas party is not evidence of Moore being treated less favorably than non-minority employees. Moore by her own deposition testimony admits that she was not the only cruise desk agent left to work while other cruise desk agents went to the Christmas party. In fact, Moore testified that there were also white cruise desk agents who remained in Tampa to work as did Moore. (Statement of Material Facts ¶ 35). She was treated the same as other white cruise desk agents by staying at work. While Moore was treated differently than some cruise desk agents by the fact that she remained to work while others went to a party, such dissimilar treatment was clearly not based on race and is not evidence of a similarly-situated non-minority employee who was treated differently than Moore.

Moore also alleges that she is aware of mistakes other white cruise desk agents made because she would hear them talking and also witnessed them correcting their mistakes. (Statement of Material Facts ¶ 36). Moore recalls a mistake made by a white female cruise desk agent (whose name Moore does not know) where she apparently booked approximately 20 passengers on an incorrect flight, and then this mistake was corrected by another white female cruise desk agent. (Statement of Material Fact ¶ 37). Moore remembers that another cruise desk agent Betty Wooten, not a supervisor or manager, made the correction for the 20 passengers booked on the incorrect flight. (Statement of Material Facts ¶ 38). Moore apparently provides this example to demonstrate

10

that other cruise desk agents also made mistakes such as those mistakes Moore was criticized for relating to errors in booking passengers' flights. (Statement of Material Facts ¶¶ 20 & n.5, 27 & n.6). However, the situation Moore points to is different from Moore's numerous problems and errors in that Moore was still in her probationary training period on the cruise desk, and the cruise desk agent (whom Moore cannot identify) was already a cruise desk agent, and therefore not subject to the same scrutiny as Moore. Equally significant is the fact that Moore is not aware of Tim Bechtold or anyone else in management having knowledge of the mistake concerning the 20 passengers booked on an incorrect flight. (Statement of Material Facts ¶ 39). Such an isolated mistake allegedly committed by an unnamed, non-probationary cruise desk agent, especially where there is no evidence of management involvement or knowledge, is not sufficient evidence for Moore to demonstrate that she was treated less favorably than a similarly situated non-minority employee.

Moore also testified at her deposition that M. J. Lucas, a white cruise desk agent, made a mistake where Lucas put a passenger on a wrong flight. Moore alleges she overheard Lucas say, "Oh, I entered the wrong flight." (Statement of Material Facts ¶ 40). Moore also claims she heard Lucas say the name, date, and flight number, so Moore pulled up the flight on her computer and saw that the correction had been made by Lucas. (Statement of Material Facts ¶ 40). Again, this is not evidence of Moore being treated differently than a similarly-situated non-minority employee because Lucas was not on probation, but rather already was a cruise desk agent, and again Moore is not aware of anyone in management being aware that Lucas made this mistake. (Statement of Material Facts ¶ 41). Moreover, Moore is not aware of Tim Bechtold or anybody else in management ever knowing or hearing about any error made by any cruise desk agent other than Moore. (Statement of Material Facts ¶ 42).

11

Finally, Moore has no other evidence even remotely suggesting a racially biased motive in Northwest's decision to disqualify her from the cruise desk. To the contrary, Moore's deposition testimony reveals that she is not aware of any black employees who wanted to work on the cruise desk prior to Moore successfully bidding on the cruise desk in October 1994. (Statement of Material Facts ¶ 54). Moore further admits that the only person she is aware of bidding on the cruise desk after Moore's disqualification is Stan Brian, an African- American male. Moore admits that Brian successfully completed his probationary training and was awarded a permanent position on the cruise desk. (Statement of Material Facts ¶ 55). In sum, Moore has no support for her race claim, and Northwest is due summary judgment.

## C. Moore's Disqualification From The Cruise Desk Was Because of Legitimate Non-Discriminatory Reasons.

Assuming *arguendo*, that Moore could establish a *prima facie* case of race discrimination in violation of §1981 (which she cannot), the Court must look to see if Northwest has articulated a legitimate, nondiscriminatory reason for Moore's disqualification from the cruise desk. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). Northwest's burden at this stage is only one of production and not persuasion. In an action alleging discrimination on account of race, "the reason offered by an employer for an adverse employment action 'does not have to be a reason that the judge or jurors would act on or approve.' Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999) (internal quotations omitted).

In the present matter, the undisputed evidence is that Moore was disqualified from the cruise desk because she failed to successfully complete the probationary training period. Northwest has

12

offered the Declaration of Tim Bechtold, and three probationary training review memoranda containing some of the significant problems and errors identified while Moore was training for the cruise desk. (Statement of Material Facts ¶¶ 9-28). Moore, by her own deposition testimony admits that she cannot dispute that she committed the errors provided in the training review memoranda. (Statement of Material Facts ¶¶ 21, 28). In an effort to provide Moore every opportunity to successfully complete training, Moore was provided an additional thirty-day training period following her second probationary training review on January 20, 1995 because her first review had been favorable, while her second review was not. (Statement of Material Facts ¶ 18). Northwest provided Moore a "refresher" course on the material covered so far in her training period, with Moore's choice of trainer. (Statement of Material Facts ¶¶ 18, 19). Moore's performance problems persisted during the additional thirty-day training period and Moore was disqualified on February 24, 1995. (Statement of Material Facts ¶ 26). Significantly, Moore at the conclusion of the additional thirty-day training period had gotten through only 50% of the total material required to successfully complete training because of her lack of progress in grasping the material. (Statement of Material Facts ¶ 17). Thus, because Moore did not demonstrate a capability to grasp the material required to work as a cruise desk agent, and because she continually had significant performance problems (despite an additional thirty-day training period and a "refresher" course provided by Moore's choice of trainers), Moore failed to successful complete her probationary training period and was disqualified from the cruise desk. Moore acknowledges that she cannot dispute the basis upon which the Company made its decision. (Statement of Material Facts ¶¶ 21, 28).

**D.    Moore Cannot Establish Pretext in Her Disqualification From The Cruise Desk.**

Because Northwest has proffered a legitimate reason for disqualifying Moore from the cruise

13

desk, the presumption against Northwest is rebutted, and Moore must come forward with evidence that the legitimate nondiscriminatory reason is pretextual and that Northwest intentionally discriminated against Moore because of her race. *Hicks,* 509 U.S. at 507.

The Supreme Court has recently held that a 'plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2109 (2000); *see also Munoz v. Oceanside Resorts. Inc.*, 223 F.3d 1340, 1346 (11th Cir. 2000). In applying this standard, the Eleventh Circuit firmly maintains that where, as in the instant case, "the plaintiff does not proffer sufficient evidence of pretext," "the defendant is entitled to summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000). Thus, under the *Reeves* standard, "if the record conclusively revealed some other non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred" the employer is entitled to judgment as a matter of law. *Id.* at 1025 (quoting *Reeves*, 120 S. Ct. 2109).

Moore cannot establish "substantial evidence" that Northwest's proffered reasons for her disqualification from the cruise desk were not the real reasons. Again, she has acknowledged that she cannot dispute that she made the errors identified by the Company in the February and March 1995 probationary reviews. (Statement of Material Facts ¶¶ 21, 28). Thus, Moore is left with only her own conclusory allegations that her performance problems were not the real reason Northwest disqualified her from the cruise desk. The Eleventh Circuit maintains that "conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional

14

discrimination where [an employer] has offered . . . extensive evidence of a legitimate, non-discriminatory reason for its action." *Rocky v. Columbia Lawnwood Regional Med. Center*, 54 F. Supp. 2d 1159, 1171 (S.D. Fla. 1999) (citing *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988)).

The fact that a plaintiff disagrees with a company's business judgment is irrelevant. Accordingly, even if Moore believes that Northwest's actions were unfair or even if she disagrees with any of the particular decisions, such beliefs and/or disagreements do not alone form the basis for pretext. *See Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer."); *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason."). Because Moore cannot establish that the legitimate nondiscriminatory reasons for her disqualification from the cruise desk were pretext for race discrimination, Northwest is entitled to summary judgment.

**E.    Moores' Alleged State Law Cause of Action for Intentional Interference with Right to Contract must Be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted.**

Moore seems to allege in her Complaint that Northwest intentionally interfered with rights she had by virtue of employment contracts with Northwest. (Complaint at ¶¶ 32-35). However, as discussed below, Moore's claim has been brought under a cause of action that does not exist in Florida. A thorough review of Florida law reveals that a cause of action for "intentional interference with right to contract" is not cognizable in that jurisdiction, or perhaps any other jurisdiction for that matter. However, Florida does recognize a cause of action in tort for "interference with a contractual

relationship." *E.g.. Nitzberg v. Zalesky,* 370 So. 2d 389 (Fla. 3d DCA 1979); *Symon v. J. Rolfe Davis, Inc.,* 245 So. 2d 278 (Fla. 4th DCA 1971). Significantly though, "a cause of action for "interference with a contractual relationship" does not exist against one who is himself a party to the contract allegedly interfered with." *E.g. United Yacht Brokers, Inc. v. Gillespie,* 377 So. 2d 668 (Fla. 1979); *Ethyl Corporation v. Balter,* 386 So. 2d 1220 (Fla. 3d DCA 1980), *cert. denied,* 452 U.S. 955 (1981); *Paradise Shores Apts., Inc. v. Practical Maintenance Co.,* 344 So. 2d 299 (Fla. 2d DCA 1977); *Roberts Co., Inc. v. P.B.O. Ltd.,* 322 So. 2d 633 (Fla. 3d DCA 1975); *Days v. Florida East Coast R. Co.,* 165 So. 2d 434 (Fla. 3d DCA 1964).

For two reasons, Moore cannot bring any interference with contractual relationship claim. First, Northwest by definition would be a party to any alleged contract governing Moore's employment. As discussed above. an interference clam cannot be brought against a party to the contract allegedly interfered with. Second, because Moore was represented by a union, any "contractual relationship" governing Moore's employment was between the union and Northwest. Therefore, Moore was not a party to any contractual relationship which was allegedly interfered with. Accordingly, this claim must be dismissed.

## IV.    CONCLUSION

For all of the foregoing reasons, Northwest respectfully submits there are no disputed issues of material fact, that Northwest is entitled to summary judgment as a matter of law on each of Moore's claims, and that Moore's Complaint should be dismissed with prejudice.

Respectfully submitted,

CARY SCHWIMMER
Tennessee Bar No. 14026
W. TERRY SMITH, JR.
Tennessee Bar No. 19179

KIESEWETTER WISE KAPLAN
 SCHWIMMER & PRATHER, PLC
2650 Thousand Oaks Boulevard
Suite 2200
Memphis, Tennessee 38118
Voice: (901) 795-6695
Fax:    (901) 795-1646
E-mail: cschwimmer@kiesewetterwise.com
E-mail: tsmith@kiesewetterwise.com

ATTORNEYS FOR
NORTHWEST AIRLINES, INC.

KENNETH W. WATERWAY
Florida Bar No. 0994235
HEINRICH GORDON HARGROVE
WEIHE & JAMES, P.A.
500 East Broward Boulevard - Suite 1000
Fort Lauderdale, Florida 33394-3092
Voice: (954) 527-2800
Fax: (954) 524-9481
Email: kwatrway@heinrichgordon.com

LOCAL COUNSEL FOR
NORTHWEST AIRLINES, INC.

17

## CERTIFICATE OF SERVICE

I do hereby certify that on this ___4TH___ day of March, 2001, one true and correct copy of of the foregoing was served via U.S. Mail, first class postage pre-paid, upon:

Jacob A. Rose
The Rose Law Firm, P.A.
215 Fifth Street
Suite 305
West Palm Beach, Florida 33401

Counsel for Plaintiffs

By: _____

18

2000 U.S. Dist. LEXIS 14789 printed in FULL format.

ELINOR LIEBERMAN, Plaintiff, v. MIAMI-DADE COUNTY, Defendant.
Case No. 99-1714-CIV-KING
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, MIAMI
DIVISION
2000 U.S. Dist. LEXIS 14789; 13 Fla. L. Weekly Fed. D 353

August 16, 2000, Decided
August 16, 2000, Filed

DISPOSITION: [*1] Defendant's Motion for Summary Judgment GRANTED. All claims, including parallel state claims dismissed.
CASE SUMMARY

PROCEDURAL POSTURE: Defendant county moved for summary judgment in plaintiff former county employee's action alleging gender discrimination based on Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C.S. § 2000e-2 et seq., and the Civil Rights Act of 1991, and based on the Florida Civil Rights Act of 1992, Fla. Stat. Ann. § 760.10 et seq.

OVERVIEW: Plaintiff former county employee charged defendant county with gender discrimination based on Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C.S. § 2000e-2 et seq., and the Civil Rights Act of 1991, and based on the Florida Civil Rights Act of 1992, Fla. Stat. Ann. § 760.10 et seq. Plaintiff alleged she was treated differently than similarly situated males and she was harassed, demoted, and fired because of gender. Defendant moved for summary judgment; the court granted. Plaintiff did not file a timely Equal Employment Opportunity Commission (EEOC) charge as to demotion, and demotion was not a "continuing violation" tolling the filing period. The EEOC harassment charge was not timely, and the mention of harassment in the charge lacked specificity required to maintain the claim; the charge did not give specific instances or dates of harassment. Plaintiff did not establish a prima facie disparate treatment discharge claim; she did not show defendant sought to replace her. Finally, plaintiff did not establish a prima facie disparate impact claim; she did not show specific employment practices creating disparate impact.

OUTCOME: Motion granted. Plaintiff did not file timely charges with Equal Employment Opportunity Commission as to demotion and harassment claims. Plaintiff did not establish prima facie cases as to dis-

parate treatment and disparate impact.

CORE TERMS: harassment, demotion, prima facie case, disparate impact, disparate treatment, duty, summary judgment, discriminatory, discriminated, specificity, budget, claimant, females, gender, discharged, gender discrimination, continuing violation, intentionally, pretextual, budgetary, untimely, demoted, employment practice, similarly situated, nonmoving party, redistributed, aggrieved, harassed, shifting, notice

CORE CONCEPTS -

Labor & Employment Law:    Equal Employment Opportunity Commission Procedures: Time Limitation
Florida is a "deferral state" which requires an aggrieved employee to file a discrimination charge with the Equal Employment Opportunity Commission within 300 days of the alleged discriminatory act.

Civil Procedure:    Summary Judgment:    Summary Judgment Standard
Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party.

Civil Procedure:    Summary Judgment:    Burdens of Production & Proof
In the context of a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then the court should refuse to grant summary judgment. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. If the evidence is merely colorable or is not significantly probative, summary judgment is proper.

v-06079-WPD    Document 53    Entered on FLSD Docket 03/12/2001    Pa

2000 U.S. Dist. LEXIS 14789, *1; 13 Fla. L. Weekly Fed. D 35    LEXSEE

Labor & Employment Law: Equal Employment Opportunity Commission Procedures: Time Limitation When examining a claim for Title VII of the Civil Rights Act of 1964 (Title VII) discrimination, the court must first look to whether the plaintiff timely filed charges with the Equal Employment Opportunity Commission. Title VII's limitation period begins when notice of the adverse action is given, not on the date when it actually takes effect. The 300 day period begins to run at the time the claimant received reasonable, unequivocal notice of an adverse and allegedly discriminatory employment decision. To determine the timeliness of a discrimination claim, the claim is measured from when the claimant receives notice of the allegedly discriminatory act.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Prohibited Employment Practices

A demotion is not considered a "continuing violation" under Title VII of the Civil Rights Act of 1964.

Labor & Employment Law: Equal Employment Opportunity Commission Procedures: Time Limitation A prerequisite to successfully maintaining a discrimination claim is that the party must file a charge with the Equal Employment Opportunity Commission within the time period allotted by the statute.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Prohibited Employment Practices

After a party has filed a charge with the Equal Employment Opportunity Commission (EEOC), any subsequent judicial proceeding is limited by the nature of the charges filed with the EEOC. The aggrieved may not complain to the EEOC of only certain instances of discrimination and then seek judicial relief for different instances of discrimination.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Prohibited Employment Practices

While a court should apply a "liberal" standard when considering the relationship between an Equal Employment Opportunity Commission (EEOC) charge and a judicial complaint, a claimant's lack of specificity in an EEOC charge precludes the claimant from later seeking judicial relief. Technicalities are particularity inappropriate in a statutory scheme like Title VII of the Civil Rights Act of 1964 in which laymen, unassisted by trained lawyers, initiate the process. However, the requirement of some specificity in a charge is not a mere technicality.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Prohibited Employment Practices

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Disparate Treatment

In the context of a Title VII of the Civil Rights Act of 1964 discrimination action, the plaintiff may establish a prima facie case of discrimination by direct evidence of discriminatory intent, statistical evidence, or by circumstantial evidence using the framework set out in McDonnell Douglas. In order to establish a prima facie case for a gender-based discharge, the plaintiff must show: (1) she was a member of a protected class; (2) job performance was sufficient to meet employer's expectations; (3) she was discharged; and (4) the employer sought a replacement for her.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Disparate Treatment

In the context of a Title VII of the Civil Rights Act of 1964 discrimination action, the plaintiff ultimately bears the burden of proving its prima facie case by showing that the defendant intentionally discriminated against the plaintiff.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Disparate Treatment

In the context of a Title VII of the Civil Rights Act of 1964 action, to bring forth a claim for disparate treatment on the basis of sex, the plaintiff must prove by a preponderance of the evidence that the defendant had a discriminatory motive. This may done by direct proof of discriminatory intent or through a series of shifting evidentiary burdens intended to sharpen the inquiry into the factual question of intentional discrimination.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Disparate Treatment

In the context of a Title VII of the Civil Rights Act of 1964 discrimination action, pursuant to the shifting burdens of proof scheme set out in McDonnell Douglas, the plaintiff must first establish a prima facie case of

discrimination. If the prima facie case is established, the burden of production shifts to the defendant to rebut the presumption of discrimination. The defendant can rebut the presumption of discrimination by producing some evidence that it had a legitimate, nondiscriminatory reasons for the decision. If such reason exists, then the defendant is entitled to summary judgment unless the plaintiff persuades the trier of fact that the defendant intentionally discriminated against the employee despite the defendant's proffered lawful reason for its employment decision. Defendant's articulation of such reasons must be clear and articulate.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Disparate Treatment

In the context of a Title VII of the Civil Rights Act of 1964 (Title VII) discrimination action, if the defendant succeeds in rebutting the presumption of discrimination raised by the plaintiff's prima facie case, then the inquiry returns to whether or not the plaintiff has met its burden of persuasion. In that event, the plaintiff must prove by a preponderance of all the evidence that the legitimate reasons offered by he defendant were a pretext for discrimination. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. The ultimate question in a Title VII disparate treatment case is whether the defendant intentionally discriminated against the plaintiff.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Disparate Treatment

In the context of a Title VII of the Civil Rights Act of 1964 discrimination action, the fact that an employer chooses to eliminate positions rather than cut other parts of the budget is not proof of pretext. The employer is free to choose whatever means it wants, as long as it is not discriminatory, in responding to bad economic conditions. Furthermore, it is not the court's role to second guess an employer's decision to reduce the workforce while facing economic hardship.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Disparate Treatment

In the context of a Title VII of the Civil Rights Act of 1964 discrimination action, the fact that a company eliminates some positions in a reduction in force (RIF), while simultaneously hiring other workers in other positions, is not sufficient to show that the RIF was pretextual. Furthermore, the plaintiff is required to show that the new positions were similarly situated to those eliminated

in the RIF.

Labor & Employment Law: Employment Discrimination: Actionable Discrimination: Disparate Impact

In the context of a Title VII of the Civil Rights Act of 1964 (Title VII) action, to establish a disparate impact claim, the plaintiff must demonstrate that there is a specific or particular employment practice that has created the disparate impact. Such a showing is an integral part of the plaintiff's prima facie case in a disparate-impact suit under Tile VII. A Title VII plaintiff does not make out a case of disparate impact simply by showing that, at the bottom line, there is a racial imbalance in the workforce.

COUNSEL: For ELINOR LIEBERMAN, plaintiff: Donna Marie Ballman, Fort Lauderdale, FL.

For MIAMI-DADE COUNTY, defendant: Lee Allen Kraftchick, Dade County Attorney's Office, Miami, FL.

JUDGES: JAMES LAWRENCE KING, UNITED STATES DISTRICT JUDGE, SOUTHERN DISTRICT OF FLORIDA.

OPINIONBY: JAMES LAWRENCE KING

OPINION: ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant Miami-Dade County's Motion for Summary Judgment filed May 1, 2000. Plaintiff responded on June 15, 2000. Defendant filed a reply on June 27, 2000.

I. FACTUAL BACKGROUND

Plaintiff, Elinor Lieberman, began her employment with the Miami-Dade County Medical Examiner's Office in 1977. (Complaint P 4 at 2.) She served as an administrative officer for the Medical Examiner's Office from February 1986 to December 1995. Id. She then began serving as Director of the Medical Examiner Administrative Services. Id. In April of 1997, she was notified that she was going to be demoted from that position. (Lieberman Dep. at 91-95.) She was officially demoted on August 20, 1997. (Complaint[*2] P 4 at 2.) On October 31, 1997, she was terminated from the Medical Examiners Office. Id. On November 3, 1997, she was reinstated with the Miami-Dade County (hereinafter "County") in the Park and Recreation Department. Id.

Ms. Lieberman's complaint charges the County with gender discrimination based on Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1072, 42 U.S.C. § 2000e-2 et seq. and the Civil Rights Act of 1991; the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq and the Dade County Code Chapter 11A. n1 Specifically, she complains that while she served as Director of Administrative Services, she was treated differently than males in similarly situated positions and that she was harassed, demoted and eventually fired because of her gender. To support her allegations of gender discrimination, she claims that her superior, Dr. Mittleman, and a male counterpart, Lt. Lengel, undermined her authority, violated the internal chain of command, excluded her from meetings, assigned duties to her which she should not have gotten, and gave her low salary raises. (Complaint PP 8,9 at 3-7.) [*3]Ms. Lieberman further claims that the County informed her that she was being terminated for "budgetary reasons" when in reality she was terminated because she was a woman. (Complaint P 11 at 7.) As an ultimate result of the harassment, demotion and wrongful termination, she claims to have suffered substantial pay decrease, reduction in retirement and loss of executive benefits. (Complaint P 12 at 7.) She contends that her allegations support gender discrimination claims under theories of disparate treatment sexual discrimination and disparate impact sexual discrimination.

n1 Plaintiff has dropped the charges under the Dade County Code contained in her complaint. (Pl.[s] Mem. Law Opp'n Mot. Summ. J. at 24.)

The County has moved for summary judgment claiming that Ms. Lieberman did not file a timely Charge of Discrimination (hereinafter "Charge") with the Equal Employment Opportunity Commission (hereinafter "EEOC") for any demotion related claims. n2 Additionally, the County claims that her harassment claims are [*4]time-barred, beyond the scope of the EEOC Charge and that the EEOC Charge lacks the specificity to maintain a harassment claim. Finally, the County claims that she has failed to provide sufficient evidence to support any claims for gender discrimination and cannot prove that she was fired or discriminated against because of her gender.

n2 Florida is a "deferral state" which requires an

aggrieved employee to file a discrimination charge with the EEOC within 300 days of the alleged discriminatory act. See Mason v. K Mart Corp., 1 F. Supp. 2d 1333. 1336 (M.D. Fla. 1998); see also Platts v. Cordis Dow Corp., 558 F. Supp. 114, 115 (S.D. Fla. 1983).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The Court must[*5] view the evidence in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then the Court should refuse to grant summary judgment. See id. at 919. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. See Anderson, 477 U.S. at 252. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. See id. at 249-50.

## III. DISCUSSION

### A. Demotion Claim

When examining a claim for Title VII discrimination, the Court must first look to whether the plaintiff[*6] timely filed charges with the EEOC. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982) (before a claimant can file a Title VII civil action, it must file a timely charge of discrimination with the EEOC). See also Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998)("a Title VII plaintiff must file a charge of discrimination within 300 days after learning of the conduct alleged")(citing 42 U.S.C. § 2000e-5(e)(1)). See also Mauro v. Board of Higher Education, 658 F. Supp. 322 (S.D.N.Y 1986)(finding that to be timely, a Title VII claim alleging discrimination must be filed with the EEOC within three hundred days after the unlawful prac-

tice occurred). Title VII's limitation period begins when notice of the adverse action is given, not on the date when it actually takes effect. See Delaware State College v. Ricks, 449 U.S. 250, 259, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980). The 300 day period begins to run at the time the claimant received reasonable, unequivocal notice of an adverse and allegedly discriminatory employment decision. See [*7] Duck v. New York City Department of Transportation, 1994 U.S. Dist. LEXIS 11226, 1994 WL 440666 (S.D.N.Y.)(citing Delaware State College v. Ricks, 449 U.S. 250, 258, 66 L. Ed. 2d 431, 101 S. Ct. 498). To determine the timeliness of a discrimination claim, the claim is measured from when the claimant receives notice of the allegedly discriminatory act. See Rozar v. Mullis, 85 F.3d 556, 563 (11th Cir. 1996); see also Morse v. University of Vermont, 973 F.2d 122, 125 (2nd Cir. 1992)(citing O'Malley v. GTE Serv. Corp., 758 F.2d 818, 820 (2nd Cir. 1985)).

Ms. Lieberman did not file a timely claim with the EEOC in relation to her demotion. By her own admission, Ms. Lieberman was notified of her demotion in April of 1997. (Lieberman Dep. at 91-95) However, Ms. Lieberman did not file charges with the EEOC until June 28, 1998, well after the required 300 days after the discriminatory action (i.e., the demotion) took place. (Lieberman Dep. PP 1-11 at 28.) For Ms. Lieberman's demotion claim to have been timely, she was required to have filed it in or about February of 1998. Thus, Ms. Lieberman's EEOC Charge with regard to her demotion was[*8] untimely filed and she is precluded from bringing forth demotion related charges in the complaint. See Mauro, 658 F. Supp. at 324 (If plaintiff's complaint is filed after the 300 days, plaintiff is precluded from initiating a Title VII action as to those complaints unless there is evidence of a continuing violation or there is a waiver, estoppel or a tolling of the limitation period).

In an effort to circumvent the untimely filing of her demotion claim in her EEOC Charge, Lieberman argues that the demotion constitutes a "continuing violation", thus, the filing period is tolled. This argument fails for the reason that a demotion is not considered a "continuing violation" under title VII. See Huckabay v. Moore, 142 F.3d 233, 240 (5th Cir. 1998); see also Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 486 (8th Cir. 1997)(finding that a demotion is an isolated event that does not constitute a continuing violation).

Accordingly, the demotion claim and any charges related to the demotion are dismissed.

B. Harassment Claim

In addition to the discriminatory demotion charges, Ms. Lieberman has brought forth harassment charges in her[*9] complaint. Ms. Lieberman claims that she was harassed by Dr. Mittleman and Lt. Lengel between February 1996 and August 1997. (Complaint PP 8(a) through 8(z)). She also claims that she was aware of the harassment before the demotion. (Lieberman Dep. PP 23-25 at 28.) However, in terms of harassment, her EEOC Charge only states: "In regard to the discrimination and significant loss of salary and benefits, the Department Head and his subordinate staff created a hostile work environment for me through constant and invidious harassment." The Charge makes no other references to harassment, offers no details as to instances of harassment nor does the Charge contain any dates as to when the alleged harassment occurred. In fact, the only dates of discriminatory activity mentioned in the Charge are 8/20/97 through 11/03/97. Despite this discrepancy between time periods identified in her Charge and the Complaint and the lack of specific allegations of harassment, Ms. Lieberman argues that by simply mentioning the word "harassment" in the Charge, her harassment claims fall within the broad scope of the EEOC Charge. The County argues that Ms. Lieberman's harassment claims are untimely and fall outside [*10]the scope of the EEOC Charge. Additionally, the County claims that her brief reference to harassment in the EEOC Charge is insufficient to maintain a harassment claim.

As noted above, a prerequisite to successfully maintaining a discrimination claim is that the party must file a charge with the EEOC within the time period allotted by the statute. See Rush v. McDonald's Corp., 966 F.2d 1104 (7th Cir. 1992). In that regard, Ms. Lieberman failed to file a timely EEOC Charge for harassment. She claims to have known of the alleged harassment well before she was demoted in August of 1997. (Lieberman Dep. PP 22-25 at 28.) However, she did not file a Charge until June 28, 1998. (Lieberman Dep. PP 1-11 at 28.) As with her demotion claim, the harassment claims are beyond the 300 day period and barred by the statute of limitations.

In addition to being untimely, Ms. Lieberman's harassment claims are beyond the scope of her EEOC Charge. Moreover, her brief mention of harassment in her EEOC Charge lacks the required specificity to maintain a harassment claim. After a party has filed a Charge with the EEOC, any subsequent judicial proceeding is limited by the nature of the charges[*11] filed with the EEOC. See Rush 966 F.2d at 1110. "The aggrieved may not complain to the EEOC of only certain instances of discrimination and then seek judicial relief for different instances of discrimination. This limitation is consistent

v-06079-WPD    Document 53    Entered on FLSD Docket 03/12/2001    Pa

2000 U.S. Dist. LEXIS 14789, *11; 13 Fla. L. Weekly Fed. D 35                    LEXSEE

with the principle of primary jurisdiction in the agency, for it gives the employer some warning of the conduct about which the employee was aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." Id. (citing Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985). Ms. Lieberman's Charge only mentions that she was harassed without giving specific instances of harassment or dates of harassment. Thus, she did not make specific allegations of harassment that would have warned the County of the harassment and given the EEOC an opportunity to provide administrative relief.

Furthermore, while a court should apply a "liberal" standard when considering the relationship between an EEOC charge and a judicial complaint n3, a claimant's lack of specificity in an EEOC Charge precludes the claimant from later seeking judicial relief. See generally [*12] Rush v. McDonald's Corp. , 966 F.2d 1104 (7th Cir. 1992). As the Court observed in Rush, "we are mindful of the admonition that 'technicalities are particularity inappropriate in a statutory scheme [like Title VII] in which laymen, unassisted by trained lawyers, initiate the process.' However, the requirement of some specificity in a charge is not a 'mere technicality'." See Rush, 966 F.2d at 1111 (quoting Love v. Pullman, Co. 404 U.S. 522, 527, 92 S. Ct. 616 30 L. Ed. 2d 679 (1972)).

---

n3 See Rush, 966 F.2d at 1111.

---

In the instant case, Lieberman's brief mention of harassment in her EEOC Charge is insufficient to maintain a harassment claim. In her EEOC Charge, Lieberman makes only a vague and brief mention of harassment. Some detail beyond a statement that "the Department Head and his subordinate staff created a hostile work environment for me through constant and invidious harassment" is necessary to allow the EEOC to perform its statutory[*13] duty. See Rush 966 F.2d at 1110 (finding that a statement in the EEOC Charge reading: "I believe I was discriminated against because of my race, Black" was insufficient to maintain a race discrimination claim). The Court does not find it unreasonable to require some additional specificity and detail as a condition precedent to successfully maintaining a harassment claim. n4 See Rush, 966 F.2d at 1112.

---

n4 In Rush, the plaintiff made a very brief and very general charge of discrimination. See Rush,

---

966 F.2d at 1110. In deciding whether such an brief and open-ended charge can support any claims that may fall within its range, the Court concluded that "the goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." Id. Similarly in the instant case, if Ms. Lieberman were allowed to pursue harassment claims based on the brief and ambiguous mention of harassment in her EEOC Charge, the very purpose of the EEOC would be frustrated.

## [*14]

Accordingly, the Court finds that Ms. Lieberman's claims for harassment are time barred and fall outside the scope of her EEOC Charge. Furthermore, her mention of harassment in the EEOC Charge lacks the specificity to maintain an action for harassment. Therefore, any claims related to harassment are dismissed.

### C. Disparate Treatment Discharge Claim

Lastly, Ms. Lieberman claims that she was wrongfully discharged from her position because of her gender and brings forth a disparate treatment discharge claim against the County.

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The plaintiff may establish a prima facie case of discrimination under Title VII by direct evidence of discriminatory intent, statistical evidence, or by circumstantial evidence using the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Standard v. A.B.E.L. Serv., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).[*15] In order to establish a prima facie case for a gender-based discharge, the plaintiff must show: (1) she was a member of a protected class; (2) job performance was sufficient to meet employer's expectations; (3) she was discharged; and (4) the employer sought a replacement for her. See Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 336 (7th Cir. 1993).

The plaintiff ultimately bears the burden of proving its prima facie case by showing that the defendant intentionally discriminated against the plaintiff. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248,

101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981). To bring forth a claim for disparate treatment on the basis of sex, the plaintiff must prove by a preponderance of the evidence that the defendant had a discriminatory motive. See Sorensen v. City of Aurora, 984 F.2d 349, 351 (10th Cir. 1993)(citing Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 986, 108 S. Ct. 2777, 2784, 101 L. Ed. 2d 827 (1988)). This may done by direct proof of discriminatory intent or through "a series of shifting evidentiary burdens" intended to sharpen the inquiry into the[*16] factual question of intentional discrimination. See Sorensen, 984 F.2d at 352 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 8, 101 S. Ct. 1089, 1095 n. 8, 67 L. Ed. 2d 207 (1981)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Pursuant to the shifting burdens of proof scheme set out in McDonnel Douglas, the plaintiff must first establish a prima facie case of discrimination. See Sorensen, 984 F.2d at 352 (citing Ortega v. Safeway Stores, Inc. 943 F.2d 1230, 1236 (10th Cir. 1991)). If the prima facie case is established, the burden of production shifts to the defendant to rebut the presumption of discrimination. See id. (quoting Drake v. City of Fort Collins, 927 F.2d 1156, 1160 (10th Cir. 1987)). The defendant can rebut the presumption of discrimination by producing "some evidence that it had a legitimate, nondiscriminatory reasons for the decision." See id. (quoting Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 986, 108 S. Ct. 2777, 2784, 101 L. Ed. 2d 827 (1988)).[*17] If such reason exists, then "the defendant is entitled to summary judgment unless the plaintiff persuades the trier of fact that the defendant intentionally discriminated against the employee despite the defendant's proffered lawful reason for its employment decision. St. Hilaire v. Pep Boys, 73 F. Supp. 2d 1366, 1370 (S.D. Fla. 1999). Defendant's articulation of such reasons must be clear and articulate. See id. (quoting Drake, 927 F.2d at 1160).

If the defendant succeeds in rebutting the presumption of discrimination raised by the plaintiff's prima facie case, then the inquiry returns to whether or not the plaintiff has met its burden of persuasion. See Sorensen, 984 F.2d at 352. In that event, the plaintiff must prove by a preponderance of all the evidence that the legitimate reasons offered by he defendant were a pretext for discrimination. See id. (citing Watson, 487 U.S. at 986, 108 S. Ct. at 2784). The Supreme Court has cautioned that the shifting burden of proof scheme is only intended to assist in marshalling and presenting relevant evidence. See id. "The ultimate burden of persuading the trier[*18] of fact that the defendant intentionally dis-

criminated against the plaintiff remains at all times with the plaintiff." See id. (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. at 986, 108 S. Ct. at 2784)(citations omitted). The ultimate question in a Title VII disparate treatment case is whether the defendant intentionally discriminated against the plaintiff. See id. (citing United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)).

Ms. Lieberman's disparate treatment discharge claim fails for several reasons. First, she does not meet the fourth prong set forth in Weiss requiring her to show that the County sought to replace her. See Weiss, 990 F.2d at 336. Instead, she testifies that her duties were redistributed among three current employees. n5 The fact that her duties were redistributed among other current employees demonstrates that the County was not seeking to replace her. Thus, she fails to establish a prima facie case for gender-based, disparate treatment discharge.

n5 Q. After you were laid off, the position that you previously occupied, that as a manager of the administrative service, was that the title?

A. Yes.

Q. Was that position ever filled?

A. Not with that title.

Q. What was it filled with?

A. It was filled with Mr. Lengel's position. Director of Operations Services. He took over my duties, basic duties were divided between Sharie and Star. Sharie took over most of my personnel duty and Star took over most of my other duties.

Q. No net increase in the number of positions?

A. No.

Q. Net decrease, your position was gone, they redistributed your duties among existing staff, is that correct?

A. Yes.

**[*19]**

Even if Ms. Lieberman could establish a prima facie case, she ultimately fails to provide sufficient evidence to prove that the County discharged her because of her gender. The County claims that it discharged her for budgetary reasons and provides the testimony of Dr. Mittleman and Budget Analyst Peter Velar reflecting that the County was forced to eliminate administrative positions as per the instructions of the Mayor. (Mittleman Dep. at 11)(Velar Dep. at 29-31). Ms. Lieberman argues that the budgetary reasons for her dismissal were

pretextual. Thus, the burden of proof shifts to Ms. Lieberman to show that the County's budgetary problems were pretextual. See Sorensen, 984 F.2d at 352.

As proof that the budget problems did not exist, Ms. Lieberman offers her own opinion that the County could have made other budget cuts without eliminating her position. The Eleventh Circuit opined in Beaver v. Rayonier, Inc. 200 F.3d 723, 728 (11th Cir. 1999) that the fact that an employer chooses to eliminate positions rather than cut other parts of the budget is not proof of pretext. The employer is free to choose whatever means it wants, as long as it is not **[*20]**discriminatory, in responding to bad economic conditions. See id. Furthermore, it is not the court's role to second guess an employer's decision to reduce the workforce while facing economic hardship. See id. As noted above, the record reflects that the County was indeed facing a budget problem. In fact, Peter Velar, the Budget Analyst, testifies that Ms. Lieberman herself, participated in the County's cost cutting efforts and was unable to find sufficient cost savings to cover the budget shortfall. (Velar Dep. at 76-79). Thus, Ms. Lieberman's contention that the County could have made other budget cuts rather than cutting her position, falls short of proving that the County's reason for her discharge was pretextual.

Ms. Lieberman also proffers that the County hired two part-time employees after she was fired as proof that there was no budget problem. However, the Eleventh Circuit points out in Beaver that the fact that a company eliminates some positions in a reduction in force (RIF), while simultaneously hiring other workers in other positions, is not sufficient to show that the RIF was pretextual. See Beaver, 200 F.3d at 728. Furthermore, the plaintiff**[*21]** is required to show that the new positions were similarly situated to those eliminated in the RIF. See Accord Watkins v. Sverdrup Technology, Inc. 153 F.3d 1308, 1315-16 (11th Cir. 1998). In the instant case, Ms. Lieberman does not offer evidence to show that her position was similarly situated to the two part-time employees.

Accordingly, Ms. Lieberman has not established a prima facie case of disparate treatment discharge and fails to provide sufficient evidence to establish that the County discharged her because of her gender. Thus, her claim for disparate treatment discharge is dismissed.

D. Disparate Impact Claim

In association with her discharge claim, Ms. Lieberman also claims that the County discharged a higher percentage of females than might otherwise be expected from the percentage of females that actually work for the County and brings forth claim under the disparate impact theory. To establish, a disparate impact claim, the plaintiff must demonstrate that there is a specific or particular employment practice that has created the disparate impact. See Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657, 104 L. Ed. 2d 733, 109 S. Ct. 2115, **[*22]** at 2124-25 (1989). Such a showing is an integral part of the plaintiff's prima facie case in a disparate-impact suit under Tile VII. Id. A Title VII plaintiff does not make out a case of disparate impact simply by showing that, "at the bottom line," there is a racial imbalance in the workforce. Id. (applying the disparate-impact analysis to a racial discrimination case).

In the instant case, Ms. Lieberman's complaint asserts that "Women were disparately impacted by job cutbacks and layoffs perpetrated by defendants." (Complaint P 27 at 10.) However, this allegation that layoffs in general had a disparate impact on females does not point out to a specific or particular employment practice that creates a disparate impact on females. Thus, Lieberman fails to establish a prima facie case of disparate impact discrimination. See Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309, 1314 (11th Cir. 1999); see also Armstrong v. Flowers, Inc., 33 F.3d 1308, 1314 (11th Cir. 1994)("To establish a prima facie case of disparate impact, a plaintiff must first identify the specific employment practice that allegedly has a disproportionate **[*23]**impact.").

In light of Ms. Lieberman's failure to point to a specific practice of the County which causes a disparate impact upon females, she fails to make out a prima facie case for disparate impact discrimination and her claim is dismissed.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, GRANTED with regard to all counts of the complaint. All claims, including the parallel state claims, are dismissed and the case is closed.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida on this 16th day of August, 2000.

JAMES LAWRENCE KING

UNITED STATES DISTRICT JUDGE

2000 U.S. Dist. LEXIS 14789, *23; 13 Fla. L. Weekly Fed. D 35    LEXSEE

SOUTHERN DISTRICT OF FLORIDA